IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| MELVIN KEAKAKU AMINA and DONNA MAE AMINA, Husband and Wife, | ) ) ) ) | CIVIL NO.  11-00714 JMS/BMK |
| Plaintiffs, | ) ) ) | ORDER GRANTING DEFENDANTS THE BANK OF NEW YORK MELLON, FKA THE BANK OF NEW YORK AND U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR J.P. MORGAN MORTGAGE ACQUISITION TRUST 2006-WMC2, ASSET BACKED PASS-THROUGH CERTIFICATES, SERIES 2006-WMC2'S MOTION FOR SUMMARY JUDGMENT, DOC. NO. 140 |
| vs. | ) ) ) ) |
| THE BANK OF NEW YORK MELLON, FKA THE BANK OF NEW YORK; U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR J.P. MORGAN MORTGAGE ACQUISITION TRUST 2006-WMC2, ASSET BACKED PASS-THROUGH CERTIFICATES, SERIES 2006-WMC2 | ) ) ) ) ) ) ) ) |
| Defendants. | ) ) ) |
| _____ | ) |

**ORDER GRANTING DEFENDANTS THE BANK OF NEW YORK MELLON, FKA THE BANK OF NEW YORK AND U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR J.P. MORGAN MORTGAGE ACQUISITION TRUST 2006-WMC2, ASSET BACKED PASS-THROUGH CERTIFICATES, SERIES 2006-WMC2'S MOTION FOR SUMMARY JUDGMENT, DOC. NO. 140**

## I.  INTRODUCTION

Plaintiffs Melvin Keakaku Amina and Donna Mae Amina

("Plaintiffs") assert a single claim against Defendants The Bank of New York

Mellon, FKA the Bank of New York ("BONY") and U.S. Bank National

Association, as Trustee for J.P. Morgan Mortgage Acquisition Trust 2006-WMC2, Asset Backed Pass-through Certificates, Series 2006-WMC2 ("US Bank") (collectively, "Defendants") to quiet title to real property located at 2304 Metcalf Street #2, Honolulu, Hawaii 96822 (the "subject property"). Plaintiffs' attempts to quiet title have a long history in this court -- in March 2010, Plaintiffs filed a first action, *Amina et al. v. WMC Mortgage Corp. et al.*, Civ. No. 10-00165 JMS-KSC ("First Action"), after they were threatened with foreclosure. Plaintiffs named multiple Defendants[1] and asserted a panoply of federal and state law claims, including a state-law claim to quiet title. After the court addressed a number of dispositive motions, Plaintiffs stopped participating and the First Action was dismissed for failure to prosecute.

In the meantime, Plaintiffs filed this action against Defendants, alleging that Defendants, who assert that the mortgage loan was sold into a public security managed by BONY and held by US Bank, actually have no interest in the subject property. This court previously explained: "this is not a case where Plaintiffs assert that Defendants' mortgagee status is invalid (for example,

---

[1] Named Defendants included WMC Mortgage LLC ("WMC"), General Electric Company ("GE"), MERSCORP, Inc. and Mortgage Electronic Registration Systems, Inc. ("MERS entities"), Chase Home Finance LLC and Chase Home Finance, Inc. ("Chase entities"), LCS Financial Services Corporation ("LCS"), and "Unknown Owners of the Evidence of the Debt and/or Owners of the Note."

because the mortgage loan was securitized, Defendants do not hold the note, or MERS lacked authority to assign the mortgage loans). Rather, Plaintiffs assert that Defendants are not mortgagees whatsoever and that there is no record evidence of any assignment of the mortgage loan to Defendants." *See Amina v. Bank of New York Mellon*, 2013 WL 1385377, at *3 (D. Haw. Apr. 3, 2013) (citations and footnote omitted).

Currently before for the court is Defendants' Motion for Summary Judgment, arguing, among other things,[2] that there is no genuine issue of material fact that US Bank is the mortgagee to the subject property. Based on the following, the court agrees and GRANTS Defendants' Motion for Summary Judgment.

## II. BACKGROUND

### A. Factual Background

The court outlines the evidence presented by both parties regarding the mortgage loan and US Bank's mortgagee status.

///

///

---

[2] Defendants also argue that Plaintiffs' quiet title claim is barred by claim preclusion. Given the court's conclusion that US Bank is the mortgagee, the court does not address Defendants' claim preclusion argument.

### 1. *The Mortgage Loans*

Defendants assert that Plaintiffs entered into two mortgage loan transactions with WMC in 2006 on the subject property -- executing two mortgages in favor of WMC on the subject property, and executing two notes in the amounts of $880,000 and $220,000. *See* Doc. No. 142-1, Defs.' Ex. C (Balloon Note for $880,000); Doc. No. 141-5, Defs.' Ex. B (mortgage on subject property referring to Balloon Note for $880,000); Doc. No. 144-5, Defs.' Ex. O-2 (Balloon Note for $220,000); Doc. No. 145-1, Defs.' Ex. O-3 (mortgage on subject property referring to Balloon Note for $220,000).

In their depositions, Plaintiffs acknowledged that they obtained two mortgage loans from WMC for the subject property in these amounts. *See* Doc. No. 144-3, Defs.' Ex. O at 13-14 (Melvin Amina Dep.); Doc. No. 144-2, Defs.' Ex. N at 18. (Donna Amina Dep.). Plaintiffs also do not dispute the facts in Defendants' Concise Statement of Facts ("CSF") that (1) Plaintiffs executed two mortgages in favor of WMC on the subject property; *see* Doc. No. 141, Defs.' CSF ¶ 3; and (2) these mortgages were executed by Plaintiffs on or about February 24, 2006 and recorded in the Bureau of Conveyances of the State of Hawaii on March 6, 2006. *Id.* ¶ 4.

Plaintiffs nonetheless assert in their own CSF that they "dispute

signing note and mortgage documents in 2006 regarding the subject property."
*See* Doc. No. 155-4, Pls.' CSF ¶ 42.  In support of this assertion, Plaintiffs present
evidence that (1) Melvin Amina testified that the signature on the Balloon Note for
$880,000 only looks like his signature (as opposed to admitting that he signed the
Balloon Note), *see* Doc. No. 68-6, Defs.' Ex. E at 14-15, and (2) Donna Amina
testified during her deposition that she is disputing that she signed the note and
mortgage documents concerning the subject property.  Doc. No. 81-5, Pls.' Ex. E
at 3; Doc. No. 158-1, Defs.' Ex. N.

> ### 2.  *Transfer of the Mortgage Loans to US Bank*

Defendants assert that around June 2006, the loans were transferred to
J.P. Morgan Acquisition Trust 2006-WMC2, Asset Backed Pass-Through
Certificates, Series 2006-WMC2 trust ("JPMorgan Trust"), pursuant to the
Pooling and Servicing Agreement, dated June 1, 2006 ("PSA").  *See* Doc. No. 141,
Defs.' CSF ¶ 5.  In support of this assertion, Defendants present the Declaration of
Amber Alegria, Assistant Secretary for JPMorgan Chase Bank, N.A. ("JP
Morgan"), who is the servicer and attorney in fact for US Bank.  *See* Doc. No.
141-1, Alegria Decl. ¶ 1.  Alegria explains that due to her position, she is familiar
with JP Morgan's recordkeeping, and that JP Morgan's records, kept in the
ordinary course of business (and attached as exhibits to Defendants' Motion),

establish that Plaintiffs' mortgage loan was transferred to US Bank, as the trustee for the JP Mortgage Trust.

In particular, Alegria asserts that around June 2006, Plaintiffs' mortgage loan was transferred to the JP Morgan Trust pursuant to the PSA. *Id.* ¶ 5; *see also* Doc. No. 142-2, Defs.' Ex. D (PSA). The PSA names US Bank as trustee of the PSA, and recites all right, title, and interest in the mortgage loans is transferred to the trustee. *See* Doc. No. 142-2, Defs.' Ex. D, at 54. The PSA further names JP Morgan as Securities Administrator and Servicer, reciting that JP Morgan shall service the mortgage loans. *Id.* at 68. Alegria explains that Plaintiffs' mortgage loans were included in this transfer to US Bank (as trustee for the JP Morgan Trust) because they are listed in the related Mortgage Loan Schedule for the JP Morgan Trust, and are identified by their Loan ID numbers, ****1019 and ****1028, which also appear on the upper left-hand corners of the notes and mortgages. Doc. No. 141-1, Alegria Decl. ¶ 6; *see also* Doc. No. 142-3, Defs.' Ex. E at 1, 43.

### 3. *Subsequent Events*

On October 1, 2006, BONY became the securities administrator for the JP Morgan Trust. Doc. No. 141-3, Erica Walsh Decl. ¶ 2.

On April 4, 2012, an assignment of mortgage from MERS, as

nominee for WMC, its successors, and assigns, to US Bank (as trustee for the JP

Morgan Trust), was recorded in the Hawaii Bureau of Conveyances. *See* Doc. No.

142-4, Defs.' Ex. F. Defendants also present a copy of the Note for $880,000,

endorsed in blank, and Alegria asserts that JP Morgan Chase has possession of it.

Doc. No. 141-1, Alegria Decl. ¶ 4; Doc. No. 142-1, Defs.' Ex. C. It is undisputed

that a Release of Mortgage for the second mortgage loan for $220,000 was

recorded in the Bureau of Conveyances on July 7, 2014. Doc. No. 141, Defs.'

CSF ¶ 20. As a result, at issue in this action is only the $880,000 mortgage loan.

## B. Procedural Background

### 1. The First Action

In the First Action, filed March 22, 2010, Plaintiffs asserted claims

against WMC, GE, MERS entities, Chase entities, LCS, and "Unknown Owners"

stemming from Plaintiffs' mortgage transaction with WMC on the subject

property, MERS' assertions that it is the mortgagee, and Chase entities' and LCS's

threatened foreclosure on the subject property. The court addressed two rounds of

dispositive motions, including (1) granting WMC and GE's Motion for Judgment

on the Pleadings and granting LCS's Motion for Summary Judgment, 2011 WL

1869835 (D. Haw. May 16, 2011); and (2) granting WMC and GE's Motion to

Dismiss Second Amended Complaint, 2011 WL 3841001 (D. Haw. Aug. 26,

2011).

After this motions practice, several of Plaintiffs' claims in their May 31, 2011 Second Amended Complaint still stood, including a claim for quiet title against MERS entities, Chase entities, and "Unknown Owners." Civ. No. 10-00165 JMS-KSC, Doc. No. 87, SAC Count II. This claim asserted that MERS entities and Chase entities have all falsely claimed a right to the subject property, and that Plaintiffs are entitled to ownership of the subject property without interference by Defendants. *Id.* ¶¶ 150, 152-55.

On September 30, 2011, Plaintiffs filed their Motion to Substitute BONY for "Unknown Owners," asserting that they wished to amend their pleading due to a March 2, 2011 letter from Chase Home Lending stating that Plaintiffs' mortgage loan was sold into a public security managed by BONY. Doc. No. 115. The court denied Plaintiffs' Motion. Doc. No. 133.

In the meantime, motions for summary judgment were filed by the remaining Defendants. Doc. Nos. 118, 121. While these Motions were pending, Plaintiffs stopped participating in this action, resulting in its dismissal with prejudice. *See* 2012 WL 612463, at *3 (D. Haw. Feb. 24, 2012). This dismissal was affirmed on appeal, and the mandate issued on June 16, 2014. Doc. No. 175.

## 2.    *This Action*

Plaintiffs filed this action against BONY on November 28, 2011, filed their First Amended Complaint on June 5, 2012, and filed their SAC adding US Bank as a Defendant on October 19, 2012.

The court outlined the factual basis of, and legal framework for, Plaintiff's quiet title in an August 9, 2012 Order denying Defendants' Motion to Dismiss Amended Complaint, 2012 WL 3283513, and an April 3, 2013 Order Denying Defendants' Motion for Summary Judgment.  2013 WL 1385377.

On October 20, 2014, Defendants filed their current Motion for Summary Judgment.  Doc. No. 140.  Plaintiffs filed an Opposition on December 8, 2014, Doc. No. 155, and Defendants filed a Reply on December 15, 2014.  Doc. No. 156.  A hearing was held on January 5, 2015.

## III.  STANDARD OF REVIEW

Summary judgment is proper where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The burden initially lies with the moving party to show that there is no genuine issue of material fact.  *See Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007) (citing *Celotex*, 477 U.S. at 323).  If the moving party carries its burden, the nonmoving party "must do more than simply show that

there is some metaphysical doubt as to the material facts [and] come forwards with

specific facts showing that there is a *genuine issue for trial*." *Matsushita Elec.

Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586-87 (1986) (citation and internal

quotation signals omitted).

"An issue is 'genuine' only if there is a sufficient evidentiary basis on

which a reasonable fact finder could find for the nonmoving party, and a dispute is

'material' only if it could affect the outcome of the suit under the governing law."

*In re Barboza*, 545 F.3d 702, 707 (9th Cir. 2008) (citing *Anderson v. Liberty

Lobby, Inc.,* 477 U.S. 242, 248 (1986)). When considering the evidence on a

motion for summary judgment, the court must draw all reasonable inferences on

behalf of the nonmoving party. *Matsushita Elec. Indus. Co.*, 475 U.S. at 587.

## IV. DISCUSSION

The court's previous Orders distinguished between two types of quiet

title claims. The first (and most usual) type of quiet title claim is brought by a

borrower against a mortgagee seeking to foreclose on a property. In such case:

> a plaintiff asserting a quiet title claim must establish his
> superior title by showing the strength of his title as
> opposed to merely attacking the title of the defendant.
> This axiom applies in the numerous cases in which this
> court has dismissed quiet title claims that are based on
> allegations that a mortgagee cannot foreclose where it
> has not established that it holds the note, or because

securitization of the mortgage loan was defective. In
such cases, this court has held that to maintain a quiet
title claim against a mortgagee, a borrower must
establish his superior title by alleging an ability to tender
the loan proceeds.

2013 WL 1385377, at *2; *see also* 2012 WL 3283513, at *2. In the second type of

case, a borrower brings a quiet title claim against a party who is allegedly "not a

mortgagee and who otherwise has no interest in the property whatsoever. As

between the borrower and such third party who has nonetheless made an adverse

claim, the borrower alleges his superior title by asserting ownership of the

property as compared to a defendant with no rights in the property," and need not

establish an ability to tender. 2012 WL 3283513, at *4.

In this action, Plaintiffs assert the latter type of quiet title claim --

they "assert that Defendants are not mortgagees whatsoever and that there is no

record evidence of any assignment of the mortgage loan to Defendants." 2013 WL

1385377, at *3. Defendants argue that this quiet title claim fails because Plaintiffs

entered into a mortgage loan on the subject property, and that this mortgage loan

was transferred into the JP Morgan Trust naming US Bank as trustee. The court

addresses the parties' arguments as to both the existence of the mortgage loan and

its transfer to the PSA.

## A.    The Mortgage Loan

The first issue -- whether Plaintiffs entered into the mortgage loan at issue -- is being raised for the first time in these summary judgment papers. Throughout the pendency of both the First Action and this action, there was no dispute that Plaintiff entered into two mortgage loans on the subject property with WMC in 2006.  (The mortgage loan for $220,000 has been released, leaving the one for $880,000 at issue.)  Indeed, the Complaint in the First Action (which included WMC as a Defendant) recited that Plaintiffs entered into these two mortgage loans with WMC, and asserted claims based upon alleged improprieties by WMC and WMC's loan documents.  *See* Civ. No. 10-00165 JMS-KSC, Doc. No. 1, Compl. ¶¶ 38-81.  And in this action, the parties have focused not on whether Plaintiffs ever entered into mortgage loans on the subject property, but rather whether these mortgage loans were transferred to US Bank.  *See, e.g.*, 2012 WL 3283513, at *5 (explaining that Plaintiffs assert "that Defendant is not a mortgagee and that there is no record evidence of any assignment of the mortgage loan to Defendant"); 2013 WL 1385377, at *3 (same).

In their Motion, Defendants assert that Plaintiffs entered into two mortgage loan transactions with WMC in 2006 on the subject property, as evidenced by two mortgages in favor of WMC on the subject property and two

notes in the amounts of $880,000 and $220,000.  *See* Doc. No. 142-1, Defs.' Ex. C (Balloon Note for $880,000); Doc. No. 141-5, Defs.' Ex. B (mortgage on subject property referring to Balloon Note for $880,000); Doc. No. 144-5, Defs.' Ex. O-2 (Balloon Note for $220,000); Doc. No. 145-1, Defs.' Ex. O-3 (mortgage on subject property referring to Balloon Note for $220,000).  These documents bear Plaintiffs' names and purported signatures, and Plaintiffs acknowledged in their deposition that they obtained two mortgage loans from WMC for the subject property in these amounts.  *See* Doc. No. 144-3, Defs.' Ex. O at 13-14 (Melvin Amina Dep.); Doc. No. 144-2, Defs.' Ex. N at 18.  (Donna Amina Dep.).

Needless to say, this evidence supports that Plaintiffs entered into the mortgage loans on the subject property, and the burden is therefore on Plaintiffs to present evidence that they did not enter into these mortgage loans.  *See Matsushita Elec. Indus. Co.*, 475 U.S. at 586-87.   In other words, Plaintiffs may not rest on mere denials of the facts, but must set out specific facts showing a genuine issue for trial.  *Anderson*, 477 U.S. at 250; *see also Gibson v. Am. Greetings Corp.*, 670 F.3d 844, 853 (8th Cir. 2012) ("[A]lthough the burden of demonstrating the absence of any genuine issue of material fact rests on the movant, a nonmovant may not rest upon mere denials or allegations, but must instead set forth specific facts sufficient to raise a genuine issue for trial." (quoting *Wingate v. Gage Cnty.*

*Sch. Dist., No. 34*, 528 F.3d 1074, 1078-79 (8th Cir. 2008)); *Thornton v. City of St.*

*Helens*, 425 F.3d 1158, 1167 (9th Cir. 2005) (holding that "conclusory statements

of bias do not carry the nonmoving party's burden in opposition to a motion for

summary judgment").

And applying this framework, Plaintiffs do not carry their burden of

raising a genuine issue of material fact on this issue. Instead, their "evidence" is

wholly conclusory. Specifically, on the one hand, Plaintiffs do not dispute

paragraphs 3 and 4 in Defendants' Concise Statement of Facts ("CSF") that

(1) Plaintiffs executed two mortgages in favor of WMC on the subject property;

*see* Doc. No. 141, Defs.' CSF ¶ 3; and (2) these mortgages were executed by

Plaintiffs on or about February 24, 2006 and recorded in the Bureau of

Conveyances of the State of Hawaii on March 6, 2006. *Id.* ¶ 4.[3] On the other

hand, Plaintiffs assert in their own CSF that they "dispute signing note and

mortgage documents in 2006 regarding the subject property." *See* Doc. No. 155-4,

Pls.' CSF ¶ 42. In support of this assertion, Plaintiffs point to the facts that

(1) Melvin Amina testified that the signature on the Balloon Note for $880,000

only looks like his signature (as opposed to admitting that he signed the Balloon

---

[3] In their CSF, "Plaintiffs accept facts #3-4 . . . from the Defs' Concise Statement." Doc.
No. 155-4, Pls.' CSF at 2.

Note), *see* Doc. No. 68-6, Defs.' Ex. E at 14-15, and (2) Donna Amina testified during her deposition that she is "disputing" that she signed the note and mortgage documents concerning the subject property. Doc. No. 81-5, Pls.' Ex. E at 3; Doc. No. 158-1, Defs.' Ex. N.[4]

Plaintiffs' "evidence" falls short of raising a genuine issue of material fact that they did not enter into the mortgage loan at issue. Specifically, Melvin Amina's testimony failing to specifically acknowledge that he signed the note does not raise a genuine issue of material fact that he did not sign it -- a party's inability to recall signing a document, without more, is insufficient to create a genuine issue of material fact as to the validity or existence of such document.[5]

---

[4] During her deposition, Donna Amina was asked: "You're not disputing that you signed note and mortgage documents in 2006 regarding the subject property, are you?" Donna Amina's original deposition transcript recorded that she responded "No, I'm not disputing that," which she subsequently changed to "Oh, I am disputing that." *See* Doc. No. 158-1, Defs.' Ex. N.

[5] *See Batiste v. Island Records, Inc.*, 179 F.3d 217, 223 (5th Cir. 1999) (finding the plaintiff's inability to remember signing an agreement insufficient to raise material issue as to validity of the agreement); *Hall v. FedEx Freight, Inc.*, 2014 WL 3401386, at *9 (E.D. Cal. July 11, 2014) ("The mere fact that [plaintiffs did] not recall signing the employment application is insufficient to dispute they signed the documents bearing their handwritten or electronic signatures."); *Wesco Distrib., Inc. v. Anshelewitz*, 2008 WL 2775005, at *7 (S.D.N.Y. July 16, 2008) (finding plaintiff's inability to confirm or deny his signature on guaranty document insufficient to create genuine issue for trial where plaintiff "acknowledge[d] that the signature 'looks like' his and he does not deny that he signed the document"); *Stern v. Espeed, Inc.*, 2006 WL 2741635, at *2 (S.D.N.Y. Sept. 22, 2006) ("In the absence of any other facts casting doubt on whether [the party] signed the agreement [the party's] lack of recollection of signing the agreement is insufficient to defeat defendant's motion [to dismiss]."); *Dassero v. Edwards*, 190 F. Supp. 2d 544, 555 (W.D.N.Y. 2002) ("[I]t is not necessarily enough for plaintiffs simply to aver, in conclusory fashion, that they do not recall signing the Agreement.").

Further, Donna Amina's conclusory dispute that they entered into mortgage loans in 2006 -- without any specific facts set forth to support such assertion -- does not raise a genuine issue of material fact on this issue. *See Anderson*, 477 U.S. at 250; *Gibson*, 670 F.3d at 853. Other courts have soundly rejected that a party may create an issue of fact by simply denying the existence of an agreement without any explanation,[6] and the court agrees with their reasoning. Indeed, this action has been pending for over three years, and despite all this time, Plaintiffs offer no explanation whatsoever as to Donna Amina's basis for disputing that they did not sign the mortgage loan documents -- Plaintiffs do not explain whether they assert that the loan documents are forgeries or that they never entered

---

[6] *Compare In re Mead*, 2013 WL 122671, at *3 (D. Vt. Jan. 9, 2013) (finding no issue of material fact as to whether the plaintiff signed mortgage documents where the plaintiff stated only that she "did not remember ever signing" such documents, and did not specifically declare that she did not sign the documents or that her signatures on the documents were forgeries); *and Ernest v. Lockheed Martin Corp.*, 2008 WL 2958964, at *5 (D. Colo. July 29, 2008) (finding no factual issue where the plaintiff denied signing arbitration agreement based on inability to recall doing so, and failed to provide evidence suggesting that his signature was fraudulently affixed to the agreement); *with Schwartz v. Bank of Am., N.A.*, 2011 WL 2292199, at *2 (D. Colo. June 7, 2011) (finding existence of factual dispute where the plaintiff not only testified that he does not recall signing promissory note, but also denies signing any note that provided for an interest rate higher than the rate to which he recalls agreeing, and stated that he applied for a different type of loan); *Ferguson v. Countrywide Credit Indus.*, 2001 WL 867103, at *1 (C.D. Cal. Apr. 23, 2001) (finding factual dispute where the plaintiff denied having seen the agreement prior to litigation, and pointed out that the signature and printed name on the agreement "appear[ed] to have been traced over or otherwise altered"); *Prevost v. Burns Int'l Sec. Serv. Corp.*, 126 F. Supp. 2d 439, 441-42 (S.D. Tex. 2000) (finding factual dispute where plaintiff provided sworn affidavit denying signatures on documents were his, along with evidence showing differences between plaintiff's purported signatures on documents produced by defendants and exemplar signatures on plainitff's driver's license and social security card).

into any mortgage loans whatsoever, and offer no excuse as to why the documents presented by Defendants are not what they say they are. Thus, the court finds that Donna Amina's *conclusory* assertion in her deposition that they dispute that they entered into the mortgage loans -- without any factual basis -- fails to raise a genuine issue of material fact as to their existence.

The court therefore finds that the undisputed evidence establishes that Plaintiffs entered into the mortgage loans on the subject property with WMC.

**B.    Transfer of the Mortgage Loan to US Bank**

As to Defendants' assertion that US Bank is the current mortgagee, Defendants have presented evidence that in June 2006, Plaintiffs' mortgage loan was transferred to JP Morgan Trust pursuant to the PSA, as is shown in the Mortgage Loan Schedule for the JP Morgan Trust listing Plaintiffs' mortgage loan. *See* Doc. No. 141-1, Alegria Decl. ¶¶ 5-6; Doc. No. 142-2, Defs.' Ex. D (PSA); Doc. No. 158, Defs.' Ex. E at 1, 43 (loan schedule). Plaintiffs' $880,000 mortgage loan is identified in the Loan Schedule by the Loan ID number ****1019, which also appears on the upper left-hand corner of the note and mortgage. Doc. No. 141-1, Alegria Decl. ¶ 6; *see also* Doc. No. 158, Defs.' Ex. E at 1, 43; Doc. No. 142-1, Defs.' Ex. C (Balloon Note for $880,000); Doc. No. 141-5, Defs.' Ex. B (mortgage on subject property referring to Balloon Note for $880,000). Further,

on April 4, 2012, an assignment of mortgage from MERS, as nominee for WMC, its successors, and assigns, to US Bank (again, as trustee for the JP Morgan Trust), was recorded in the Hawaii Bureau of Conveyances. *See* Doc. No. 142-4, Defs.' Ex. F. Finally, Defendants present a copy of the Note, endorsed in blank, and Alegria asserts that JP Morgan Chase has possession of it. Doc. No. 141-1, Alegria Decl. ¶ 4; Doc. No. 142-1, Defs.' Ex. C.

This evidence supports the conclusion that US Bank is the mortgagee on the mortgage loan on the subject property. Further, because Plaintiffs concede that they cannot tender the money to pay off their mortgage loan, *see* Doc. No. 141, Defs.' CSF ¶ 16, Defendants are entitled to summary judgment on the quiet title claim unless Plaintiffs can raise a genuine issue of material fact that US Bank is not the mortgagee. In opposition, Plaintiffs do not present any evidence refuting that the mortgage loan was transferred to US Bank. Instead, Plaintiffs raise a panoply of arguments falling into three general categories -- that Defendants' evidence is inadmissible, that the transfer of the mortgage loan to US Bank is invalid, and that the court should allow Plaintiffs discovery pursuant to Rule 56(d). These arguments do not stand scrutiny.

///

///

## 1.    *Plaintiffs' Evidentiary Objections*

The bulk of Plaintiffs' evidentiary objections are directed to the Alegria Declaration.  In particular, Plaintiffs argue that the court should disregard the Alegria Declaration because she has no personal knowledge regarding the inclusion of Plaintiff's mortgage loan in the PSA, she failed to establish that JP Morgan is the attorney-in-fact for US Bank, and Defendants did not disclose Alegria in their Rule 26 initial disclosures.  *See* Doc. No. 155, Pls.' Opp'n at 2-4.  The court rejects these arguments.

First, Alegria established that she is a "qualified witness" to testify regarding the PSA and Loan Schedule and that the records are admissible as business records under Federal Rule of Evidence 803(6).  Specifically, Alegria asserted that she is familiar with the JP Morgan's records system for information related to residential mortgage loans it services, the records were made at or near the time of the occurrence of the matters set forth in the records, and they are kept in the regular course of JP Morgan's business.  *See* Doc. No. 141-1, Alegria Decl. ¶ 2.  This foundation is sufficient -- Rule 803(6) requires only that the witness understand the record-keeping system, not that she herself made the documents.[7]

---

[7] Plaintiffs also argue that the assignment of mortgage is inadmissible because it was not produced in discovery, and that Alegria did not attach any documents to her Declaration.  *See*

(continued...)

*See United States v. Ray*, 930 F.2d 1368, 1370 (9th Cir. 1990).

Second, Alegria is the assistant secretary for JP Morgan, who is the servicer and attorney in fact for US Bank, which is established by the Limited Power of Attorney authorizing JP Morgan to represent US Bank, as trustee for the trust at issue in this action. *See* Doc. No. 141-1, Alegria Decl. ¶ 1; Doc. No. 141-4, Defs.' Ex. A at USB02310. Thus, the Alegria Declaration establishes that JP Morgan is the attorney-in-fact for US Bank as to mortgage loan at issue.

Finally, Defendants did not violate Rule 26 by failing to supplement their initial disclosures to identify Alegria as a witness with relevant information. Federal Rule of Civil Procedure 26(e) requires a party to supplement disclosures only where "the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1)(A). The Advisory Committee Notes on the 1993 Amendments to Rule 26(e) explain that there is "no obligation to provide supplemental or corrective information that has been otherwise made known to the parties in writing or during the discovery process, as when a witness not previously

---

[7](...continued)
Doc. No. 155, Pls.' Opp'n at 2-3. Contrary to these arguments, the assignment was produced in discovery, Doc. No. 163-1, Defs.' Ex. F, and all of the exhibits referred to in the Alegria Declaration were attached as exhibits in the Motion for Summary Judgment.

disclosed is identified during the taking of a deposition." Thus, so long as

Plaintiffs were made aware of Alegria and her relevance to the issues in this case,

there is no violation of Rule 26.[8] And Plaintiffs were certainly aware of Alegria

and her role in verifying the relevant documents in this action -- she verified

Defendants' July 10, 2014 interrogatory responses. *See* Doc. No. 139-2, Pls.' Ex.

B. There is no basis to strike the Alegria Declaration.[9]

In sum, the court rejects Plaintiffs' arguments that Defendants'

evidence establishing that US Bank is the mortgagee is inadmissible.

### 2. *Validity of the Transfer of the Mortgage Loan to US Bank*

In an apparent contradiction to their assertion that US Bank is a

complete stranger to the mortgage loan, Plaintiffs raise, in rapid-fire succession

and with no legal or factual support, a slew of arguments challenging the validity

---

[8] *See, e.g.*, *All Star Seed v. Nationwide Agribusiness Ins. Co.*, 2013 WL 1882260, at *12 (S.D. Cal. May 3, 2013) ("Defendant's failure to initially identify Mr. Hake and Mr. Savona and the late supplementation was not in violation of FRCP 26. Plaintiff was made aware of the identity and potential importance of Mr. Hake and Mr. Savona through the discovery process."); *Vieste, LLC v. Hill Redwood Dev.*, 2011 WL 2181200, at *3 (N.D. Cal. June 3, 2011) ("The information regarding [the witnesses] thus was 'made known to [Plaintiffs] during the discovery process,' per Rule 26(e)(1), which discharged Defendants' duty to supplement their disclosures with respect to these two individuals.").

[9] And in any event, any failure by Defendants to supplement their initial disclosures is harmless where Plaintiffs were aware of Alegria and her relevance to the issues in this action. See Fed. R. Civ. P. 37(c)(1) ("A party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1) . . . is not, unless such failure is harmless, permitted to use as evidence at trial, at a hearing, or on a motion for any witness or information not so disclosed.").

of the assignment to US Bank. These arguments include that the assignment is invalid because (1) the assignment was signed on behalf of JP Morgan by individuals who are robosigners without actual authority and who have signed other assignments on behalf of other companies; (2) MERS lacked authority to assign the mortgage on behalf of WMC to the PSA where MERS is not in good standing in Hawaii and never adopted policies certifying officers, WMC was never registered to do business in Hawaii, WMC did not exist as of the date of assignment, WMC is not a member of MERS, and the nominee/agency relationship between MERS and WMC does not include the right of assignment; (3) the March 22, 2012 assignment violated the PSA, whose closing date was June 28, 2006; (4) no "good and valuable consideration" was given as recited in the assignment, the note was not delivered to US Bank, and the signing was not witnessed by a notary. Doc. No. 155, Pls.' Opp'n at 7-8. The court rejects these arguments.

As an initial matter, all of these arguments are directed to discrediting US Bank's mortgagee status, as opposed to establishing that US Bank is a stranger to the mortgage loan. Under this lens, Plaintiffs are no longer proceeding under a quiet title theory that Defendants are strangers to the mortgage loan, but rather that Defendants' mortgagee status is somehow defective. To proceed under this

theory, Plaintiffs must establish their "superior title by showing the strength of [their] title as opposed to merely attacking the title of [Defendants]," and must establish superior title through an ability to tender. 2013 WL 1385377, at *2. Such claim fails -- it is undisputed that Plaintiffs are unable to tender the money to pay off their mortgage loan, *see* Doc. No. 141, Defs.' CSF ¶ 16, and Plaintiffs therefore cannot avoid summary judgment by simply attacking US Bank's status as mortgagee.

Second, it is well-established that a borrower, who is a third party to the PSA and assignment, lacks standing to challenge their validity. *Velasco v. Security National Mortgage Co.*, 823 F. Supp. 2d 1061 (D. Haw. 2011), explains:

> In Hawaii, "[g]enerally 'third parties do not have enforceable contract rights. The exception to the general rule involves *intended* third party beneficiaries.'" *Ass'n of Apartment Owners of Newtown Meadows v. Venture 15, Inc.*, 115 Haw. 232, 167 P.3d 225, 262 (2007) (citing *Pancakes of Haw., Inc. v. Pomare Props. Corp.*, 85 Haw. 300, 944 P.2d 97, 106 (Haw. App. 1997)). "A third party beneficiary is one for whose benefit a promise is made in contract but who is not a party to the contract." *Id.* (internal citations and quotations omitted). Absent an enforceable contract right, a party lacks standing to challenge the validity of the contract. *See id.*; *Samsel v. Allstate Ins. Co.*, 199 Ariz. 480, 19 P.3d 621, 625 (Ariz. App. 2001) ("For a third party to maintain an action on a contract, the contract must have been entered into for the express benefit of the third party; the party cannot be merely an incidental beneficiary.") (citations omitted);

*Palmer v. Bahm*, 331 Mont. 105, 128 P.3d 1031, 1034
(2006) (similar).

      Here, Plaintiffs do not allege that they are parties
to the Assignment, nor can they demonstrate otherwise.
*See* SAC, Ex. B (Assignment listing MERS as assignor
and BAC as assignee). Similarly, Plaintiffs have not
alleged, nor can they prove, that they are intended
beneficiaries of the Assignment. Thus, as strangers to
the Assignment and without any evidence or reason to
believe that they are intended beneficiaries of that
contract, Plaintiffs may not dispute the validity of the
Assignment. *See Livonia Property Holdings, L.L.C. v.
12840-12976 Farmington Road Holdings, LLC*, 717 F.
Supp. 2d 724, 737 (E.D. Mich. 2010) (holding that a
plaintiff who was not and is not a party to any
assignments or Pooling and Servicing Agreement at
issue "lacks standing to challenge their validity or the
parties' compliance with those contracts.").

*Id.* at 1067. This reasoning applies equally to both the assignment and the PSA --

Plaintiffs are not parties to either of them, and therefore do not have standing to

challenge them. *See also Abubo v. New York Mellon*, 2011 WL 6011787, at *8

(D. Haw. Nov. 30, 2011) (rejecting argument that assignment is invalid on two

bases "(1) because a third party lacks standing to raise a violation of a PSA, or

(2) because noncompliance with terms of a PSA is irrelevant to the validity of the

assignment (or both)"); *Nottage v. Bank of New York Mellon*, 2012 WL 5305506,

at *5 (D. Haw. Oct. 25, 2012) (same); *Benoist v. U.S. Bank Nat'l Ass'n*, 2012 WL

3202180, at *5 (D. Haw. Aug. 3, 2012) (same).

The court therefore rejects that Plaintiffs may raise a genuine issue of material fact by challenging the validity of the assignment of the mortgage loan.

### 3.     *Rule 56(d)*

Finally, Plaintiffs seek a Rule 56(d) continuance, arguing that they need discovery to prove their allegations challenging the validity of the assignment to US Bank, as well as to prove that the assignment may be forged. *See* Doc. No. 155, Pls.' Opp'n at 8-9; Doc. No. 155-4, Pls.' CSF ¶¶ 33-40 (alleging facts directed to challenging the validity of the assignment for which Plaintiffs assert discovery is needed).

Federal Rule of Civil Procedure 56(d)[10] provides a mechanism for litigants to avoid summary judgment when they have not had sufficient time to develop affirmative evidence. *Burlington N. Santa Fe R. Co. v. Assiniboine & Sioux Tribes of Fort Peck Reservation*, 323 F.3d 767, 773 (9th Cir. 2003). "The general principle of Rule [56(d)] is that 'summary judgment should be refused

---

[10] Rule 56(d) provides:
> When Facts Are Unavailable to the Nonmovant. If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
> > (1) defer considering the motion or deny it;
> > (2) allow time to obtain affidavits or declarations or to take discovery; or
> > (3) issue any other appropriate order.

where the nonmoving party has not had the opportunity to discover information that is essential to his opposition." *Price v. W. Resources, Inc.*, 232 F.3d 779, 783 (10th Cir. 2000) (quoting *Anderson*, 477 U.S. at 250 n.5).

Under Rule 56(d), "[t]he requesting party must show: (1) it has set forth in affidavit form the specific facts it hopes to elicit from further discovery; (2) the facts sought exist; and (3) the sought-after facts are essential to oppose summary judgment." *Family Home & Fin. Ctr. v. Fed. Home Loan Mortg. Corp.*, 525 F.3d 822, 827 (9th Cir. 2008); *see also Tatum v. City & Cnty. of S.F.*, 441 F.3d 1090, 1100 (9th Cir. 2006). "Failure to comply with these requirements 'is a proper ground for denying discovery and proceeding to summary judgment.'" *Family Home & Fin. Ctr.*, 525 F.3d at 827 (quoting *Brae Transp., Inc. v. Coopers & Lybrand*, 790 F.2d 1439, 1443 (9th Cir. 1986)); *see also Tatum*, 441 F.3d at 1100 (stating where a party does not satisfy the requirements of Rule 56(d), a district court acts within its discretion in denying the motion).

Plaintiffs are not entitled to Rule 56(d) relief. This action has been pending for over three years and discovery is now closed in this action. As a result, Plaintiffs are not merely seeking a continuance of the motion for summary judgment, but are seeking to reopen discovery. Magistrate Judge Kurren previously addressed several requests for extensions of the discovery deadline, and

denied Plaintiffs' most recent request.  Doc. No. 154.  The court will not revisit

that determination, especially where the parties did not seek its review by this

court.  Further, even if the court addresses the substance of the Rule 56(d) request,

it lacks merit.  Plaintiffs seek discovery to support their arguments that US Bank's

assignment is invalid, but as explained above, Plaintiffs lack standing to challenge

the assignment and the PSA.  As a result, Plaintiffs' sought-after facts would not

assist Plaintiffs in opposing summary judgment.

Further, Plaintiffs offer no basis for their assertion that the assignment

may be forged.  Instead, they argue, with no factual or legal support whatsover,

that "the assignment was prepared by Erika Lance of NTC (Nationwide Title

Clearing) in Florida, which is notorious for creating forged real property title

documents (commonly known as 'ta-da' assignments) and which is under

investigation in California and Illinois for robo-signing and fraud."  Doc. No. 155,

Pls.' Opp'n at 8-9.  The court will not reopen discovery or delay summary

judgment for a wild goose chase Plaintiffs could have pursued during discovery.

The court therefore denies Plaintiffs' request for the Rule 56(d)

continuance.

In sum, Defendants have carried their burden of establishing that the

mortgage loan was transferred to US Bank, such that US Bank is the mortgagee on

the subject property.  In opposition, Plaintiffs have failed to raise a genuine issue of material fact that US Bank is not the mortgagee.  Further, because it is undisputed that Plaintiffs are unable to tender the loan proceeds, Plaintiffs are not entitled to quiet title against US Bank.  As a result, the court GRANTS Defendants' Motion for summary judgment on the quiet title claim.

## V.  CONCLUSION

Based on the above, the court GRANTS Defendants' Motion for Summary Judgment.  The Clerk of Court is directed to close the case file after

///

///

///

///

///

///

///

///

///

///

///

entry of the court's Entering Order Denying Plaintiffs' Verified Motion for Leave to File Plaintiffs' Motion for Summary Judgment Out of Time, Doc. No. 160.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, January 7, 2015.



/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*Amina et al. v. Bank of New York Mellon*, Civ. No. 11-00714 JMS/BMK, Order Granting Defendants the Bank of New York Mellon, FKA the Bank of New York and U.S. Bank National Association, as Trustee for J.P. Morgan Mortgage Acquisition Trust 2006-WMC2, Asset Backed Pass-through Certificates, Series 2006-WMC2's Motion for Summary Judgment, Doc. No. 140